**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| (1) CHRISTOPHER J. TARVER, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| (1) STEVE KUNZWEILER, | ) | |
| District Attorney for Tulsa County, and | ) | |
| State of Oklahoma; | ) | |
| Defendant. | ) | |

**CIVIL RIGHTS COMPLAINT PURSUANT TO 42 U.S.C. § 1983**

COMES NOW the Plaintiff, CHRISTOPHER J. TARVER, # 225730, a state prisoner, through his attorney of record, Debra K. Hampton, and submits this Civil Rights Complaint against the above-named Defendant. The Plaintiff alleges and states:

**I.   JURISDICTION AND VENUE**

1.   The cause of this action is brought under 42 U.S.C. § 1983 with this Court having jurisdiction under 42 U.S.C. § 1331 and 28 U.S.C. §§ 1343. Jurisdiction is also asserted under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, et seq.

2.   This action does not involve diversity jurisdiction.

3.   Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

**II.   PREVIOUS FEDERAL CIVIL ACTIONS OR APPEALS**

The Plaintiff has filed no other actions in Federal Court for a Civil Rights Complaint under § 1983 addressing these issues.

### III. THE PARTIES TO THIS COMPLAINT:

A. The Plaintiff, CHRISTOPHER J. TARVER, # 225730, is a state prisoner, who resides at the Cimarron Correctional Facility, Cushing, OK.

B. The Defendant, STEVE KUNZWEILER, District Attorney for Tulsa County, State of Oklahoma, was working under color of state law when the allegations arose. *West v. Atkins*, 487 U.S. 42 (1988). The Defendant is a resident of the State of Oklahoma.

### IV. FACTS ENTITLING PLAINTIFF TO RELIEF[1]

1. The Plaintiff is seeking an injunction requiring the Defendant to release the chain of custody of biological material to an accredited laboratory in San Antonio, Texas, that was secured in an investigation for DNA testing. Plaintiff states that Oklahoma's post-conviction DNA testing statute is unconstitutional providing a constitutional inadequacy to access biological material to prove Plaintiff's innocence through new evidence.

2. The Plaintiff was charged by information in the District Court of Tulsa County Case No. CF-2006-5408, and convicted of one count of Murder in the First-Degree, in violation of 21 O.S. 701.7 (2011) The jury fixed punishment at life imprisonment with the possibility of parole. Plaintiff met the statutory requirement to seek DNA testing under 22 O.S. 2013 § 1373.2 et seq.

3. Plaintiff timely appealed to the Oklahoma Court of Criminal Appeals (OCCA) in Case No. F-2012-189. The appeal was affirmed on August 2, 2013. *Huey v. State*, (not for publication).

   I. The introduction of certain photographs was so unfairly prejudicial and needlessly cumulative as to render his trial unfair; and

   II. The admission of Detective Regaldo's opinion was improper and denied him a fair trial.

---

[1] Fed. R. Civ. P. 8 (a)(2) only requires a short and plain statement of the claim showing that the pleader is entitled to relief;

2

4. On September 9, 2009, Petitioner applied for post-conviction relief, the state filed a Response on October 9, 2009. On October 19, 2009, the district court issued an Order Denying the Application. Petitioner filed a Notice of Intent to Appeal. Petitioner perfected an appeal to the OCCA in Case No. PC-2009-1027. On February 10, 2010, the OCCA issued an Order Affirming the Denial of Post-Conviction Relief.

5. Plaintiff sought post-conviction DNA testing in the state district court maintaining his plea of not guilty and that he is factually innocent of the offense he was convicted. The DNA testing of biological evidence that Plaintiff seeks would conclusively establish by *"new evidence"* that he is factually innocent.

6. Plaintiff simultaneously sought post-conviction relief in this matter which discussed the constitutional violations to display that a reasonable probability existed he would not have been convicted of Murder.

7. Petitioner states that Gary Arps possessed a firearm that was never recovered and Arps DNA on the cartridge would have corroborated Petitioner's claims that Arps pulled the weapon on him which is exculpatory. Thus, Petitioner would be factually innocent of first-degree murder and corroborate his claims of self-defense. Thus, there is a reasonable likelihood that the outcome of the proceedings would have been different.

8. Evidence List Demonstrating the Chain of Custody is Sufficient for DNA Testing.

   a. Item 8 list (1) CARTRIDGECASE WIN 25AUTO; recovered from floor of the SW Bedroom, west wall; Location: 22A0652.

   b. Item 23 list (1) CARTRIDGECASE WIN 25AUTO; recovered from floor of the SW Bedroom, near west wall; Location: 22A0652.

  c. Item 29 list (1) BLUECOAT; recovered from front sidewalk; Location: 22A0652. Petitioner wants the coat analyzed to determine if the blood on the coat was splatter, a swipe or transfer to determine how the blood was deposited. Since the weapon was never recovered this is important to understanding the crime scene.

  d. Item 49-50; (1) BAG FROM LEFT HAND; (1) BAG FROM RIGHT HAND; from decedent; Location: 22A0652. Petitioner states the bags obtained from decedent's hands can produce a complex DNA mixture and also capable of producing evidence of Gun Shot Residue. (GSR). This is also exculpatory.

  e. Item 54; (1) DNA BLOOD, Location: 22A0652 (used for a control sample).

## V. FACTS DEMONSTRATING A REASONABLE PROBABILITY

Ms. Claudia ("Ms. Stephenson") her husband Stermond ("Mr. Stephenson") and Larita ("Turner"), the alleged victim's girlfriend, (Tr. Vol. IV. 543) resided at 1819 North College in Tulsa, Oklahoma, where the alleged offense occurred on November 6, 2006. (Tr. Vol. IV. 514) Ms. Stephenson lived in a back bedroom that was also a den. (Tr. Vol. IV. 514, 518) Ms. Stephenson testified that they were sitting at the dining table. (Tr. Vol. IV. 535) Ms. Stephenson admitted that Mr. Stephenson bought Crack from the Petitioner. (Tr. Vol. IV. 536-537) Ms. Stephenson did not see the altercation which occurred and had never seen Petitioner with the weapon. (Tr. Vol. IV. 539) Ms. Stephenson also testified that she could not hear what the two men were saying to each other. (Tr. Vol. IV. 543) She did not know how decedent's pants got pulled down. (Tr. Vol. IV. 537) She also did not know who placed a towel over decedent's head before police arrived. (Tr. Vol. IV. 537-538)

Officer Joel ("Off. Spitler") was the first officer to arrive at the residence. Upon arrival he observed one female walking through the yard toward the gate and another female on the front porch. (Tr. Vol. V. 675) Off. Spitler identified Turner as the female walking toward the gate. (Tr.

4

Vol. V. 680) He also testified the female by the gate was calm and Ms. Stephenson was on the porch crying hysterically. (Tr. Vol. V. 676, 680).

Turner had motive to falsify her information, she gave three stories about getting her coat which had the decedent's blood on it. First, she claimed the Police officer told her she could go back into the residence to get her coat without naming which officer permitted her to enter the crime scene. During re-direct examination, Turner changed her story testifying that she never did get her coat from the bedroom but from the hallway next to the southwest room were the body was located (Tr. Vol. V. 657, 661) The coat should have had no amount of blood on it if she had not been in the same room as the decedent. Turner's story then changed as she testified that she did go inside the bedroom where the body was located to pick up her coat. Cpl. Gene ("Watkins"), Crime Scene Investigator with Tulsa P.D., testified that upon his arrival he noticed that a blue coat was hanging over a banister rail on the porch which had blood on it, that it was later determined the coat belonged to Turner. Watkins testified he did not examine the coat for any Swipe Marks or Blood Splatter, that the coat was collected but he did no examination upon it. (Tr. Vol. VI. 683, 719-20).

Turner was questioned about whether investigators threatened her. (Tr. Vol. V. 633) She answered "No, they were saying they were going to put me in a cell with -- if I don't say this and that and the other but -- and that that's the reason when -- and when they said that, but I came with the truth." (Tr. Vol. V. 633). Turner was more likely led into making false statements in fear of going to jail.

Turner also admitted that Gary was arguing with the shooter and not the shooter was arguing with him. (Tr. Vol. V. 641) Gary appeared to be the aggressor and supporting a directed verdict, by a preponderance of the evidence relating to a claim of self-defense. Turner also

5

admitted that she originally denied Petitioner had a gun when she woke up. Turner then changed her answer about never seeing Petitioner with a gun when she woke up to "yes" he did have a gun. (Tr. Vol. V. 643-645). The reason that Turner did not see Petitioner with a gun was because he never had true possession of the weapon.

Mr. Stephenson had seen Petitioner earlier that day at Monica Miller's ("Miller") house (Tr. Vol. V. 593) Miller also admitted she had convictions involving truth or dishonesty. (Tr. Vol. V. 665) Miller testified when Petitioner was there, he asked if she had seen Rita, referring to Turner. (Tr. Vol. V. 666) On cross-examination Miller said Petitioner told her Turner owed him money. (Tr. Vol. V. 667) Miller denied that Mr. Stephenson was at her home earlier that day despite Mr. Stephenson having seen Petitioner there. (Tr. Vol. V. 668). Miller denied that Mr. Stephenson gave Petitioner a hundred and odd dollars. (Tr. Vol. V. 668) Miller admitted that she went to the Stephenson's home after she had learned that someone had been shot over there. (Tr. Vol. V. 669) Miller also admitted that the decedent was her friend. (Tr. Vol. V. 669)

Further, on cross-examination, Miller was asked if the decedent was a drug dealer to which the state objected to relevancy, the Court sustained. (Tr. Vol. V. 670) Det. Regalado asked Petitioner in an interview.[2] "Anything else you can tell us about what happened?" Petitioner stated, "Oh sh*t, the dude just busted up in that m***er F***er and I'm like man what the f**k going on man, and then I (inaudible). Det. Regalado stated: "He said he was tired of people coming in through there?" Petitioner said, "Yeah tired of people coming through there and stealing (inaudible) they'd rather buy from me than buy from you."

---

[2] Transcript of the November 6, 2006, interview at 2250 hours with Det. Regalado and Petitioner.

### Issues Involving Biological and Corroborating Evidence from the Record Establishing Petitioner's Claim of Self-Defense by a Preponderance of the Evidence.

Cpl. Gene ("Watkins") Crime Scene Investigator with Tulsa P.D. testified blood drops came from here so it would follow like an altercation or something was hit and then it drops. (Tr. Vol. V. 697) Watkins testified there were blood drops on the top of the socks and blood smears of the bottoms of both feet. (Tr. Vol. V. 715) Watkins testified the blood drops had to be deposited on the socks before the decedent was lying down. (Tr. Vol. V. 716) Watkins testified the high velocity spatter contradicted the spatter coming from the position decedent was in. (Tr. Vol. V. 719). Petitioner argues these facts supporting his self-defense claim. The wounds described at trial, are wounds consistent with self-defense. The description of forensic evidence corroborates Petitioner's excited utterances to Det. Regalado discussed below.

Petitioner agreed to talk to Det. Regalado, he signed a Miranda waiver and Det. Regalado conducted an interview. Petitioner admitted that he was engaging in illicit activity, the sale of drugs, which gave more credibility to Petitioner. Det. Regalado asked Petitioner, "Now when you say the dude was harassing you, which dude are we talking about?" Petitioner responded, "I don't know who he is." Petitioner admitted:

| | |
|---|---|
| Petitioner: | I went to sell her some dope. |
| Det: | O.K. So, you were selling her some dope. Then what happens? |
| Petitioner: | So, then we get to arguing and (inaudible) |
| Det: | So, this guy pulls out a pistol? |
| Petitioner: | Yeah. |
| Det: | O.K. And then what happens? |
| Petitioner: | He goes to try to rob me, and I'm telling him "hold on, hold on, hold on, I'll give you this s_t". I reached into my pocket like I'm going to give him my s_t. I rush him. |

7

| | |
|---|---|
| Det: | O.K. So, you act like you're going to pull out your stuff to give to him and then you rush him. |
| Petitioner: | Yeah. |
| Det: | O.K. And then what happens? I mean - are you wrestling with him? |
| Petitioner: | I'm wrestling with him, I'm trying to get him to get the (inaudible)... the m_f_ is just going off - fires - the gun's just going off. |
| Det: | How many times did you shoot him? |
| Petitioner: | I can't even tell you — I don't know. I think I shot him once; maybe twice... he just kept rushing me. |
| Det: | O.K. At some point do you pull this guy's shorts down looking for something he might have taken from you or anything like that? |
| Petitioner: | Uh uh. I never did get the chance to get my s_t. |
| Det: | O.K. So you didn't get the chance to get your stuff? |
| Petitioner: | Uh uh. |

In Case File Number: 2006-078553, lists several items seized as evidence. Item # 4 "Suspected drugs (white chunks) in plastic bag" and Item # 24 "Small blue plastic container with suspected drugs (white chunk)." Among these items were (2) bullets that were fired and consistent with the Petitioner's claims he acted in self-defense.

Petitioner testified in his own defense, and claimed that he shot the victim with the victim's own gun, that his actions was not that of first-degree murder but of a man acting in self-defense. (Tr. Vol. VI. 943-50) The blood splatter and angles of the projectiles are consistent as discussed in relation to Petitioner's claims of self-defense. Petitioner did not waive self-defense and filed a Motion to Dismiss under 21 O.S. § 1289.25.

**VI.    GROUND I:**

>   **PLAINTIFF'S FOURTEENTH AMENDMENT RIGHT TO DUE PROCESS WAS VIOLATED FOR DEFENDANT'S REFUSAL TO PROVIDE ACCESS TO BIOLOGICAL EVIDENCE FOR DNA TESTING BECAUSE OKLAHOMA'S POST-CONVICTION DNA STATUTE PROVIDES AN UNCONSTITUTIONAL INADEQUACY TO ACCESS BIOLOGICAL EVIDENCE.**

Plaintiff does not attack the state court determinations and only seeks an injunction to have access to forensic "DNA" deoxyribonucleic acid testing of biological material secured in the investigation, that was not tested, and evidence tested under 22 O.S. 2013 §1373.[3] Plaintiff states he is seeking DNA testing to establish that he is "factually innocent" with new evidence. The Plaintiff is eligible to seek DNA testing under 22 O.S. § 1373.2 et seq. but Oklahoma's post-conviction DNA statute is unconstitutional because it provides an unconstitutional inadequacy to access biological evidence.

The items that Plaintiff seeks for testing are in the custody of the Defendant with the chain of custody being sufficient. Plaintiff argues that his Fourteenth Amendment rights are being violated by the Defendant not providing access to biological material. 22 O.S.2013 § 1373.1(1) under the "Post-Conviction DNA Act" defines the term ***"Biological material"*** as follows:

>   ***"Biological material"*** means the contents of a sexual assault evidence collection kit **as well as any item** that contains or includes blood, semen, hair, saliva, skin tissue, fingernail scrapings or parings, bone, bodily fluids or other identifiable biological material that was collected as part of the criminal investigation or may reasonably be used to incriminate or exculpate any person for an offense and that ***may be suitable for forensic DNA testing***. This definition applies whether the material was catalogued separately including, but not limited to, on a swab, a slide or ***on any other evidence***;

---

[3] "Post-Conviction DNA Act."

Plaintiff's challenge is attacking the constitutionality of Oklahoma's post-conviction DNA testing statutes and the adequacy of access to biological material. See Okla. Stat. tit. 22 §§ 1373-1373.7. See *Skinner v. Switzer*, 562 U.S. 521 (2011). Plaintiff states he is eligible to petition for DNA testing which raises constitutional concerns to Oklahoma's DNA testing statute under 22 O.S.2013 § 1373.2 which provides:

**Eligibility and Procedures for Post-Conviction DNA Testing:**

A. Notwithstanding any other provision of law concerning post-conviction relief, a person convicted of a violent felony crime or who has received a sentence of twenty-five (25) years or more and who asserts that he or she did not commit such crime may file a motion in the sentencing Court requesting forensic DNA testing of any biological material secured in the investigation or prosecution attendant to the challenged conviction. Persons eligible for testing shall include any and all of the following:

   1. Persons currently incarcerated, civilly committed, on parole or probation or subject to sex offender registration;

   2. Persons convicted on a plea of not guilty, guilty or nolo contendere;

   3. Persons deemed to have provided a confession or admission related to the crime, either before or after conviction of the crime; and

   4. Persons who have discharged the sentence for which the person was convicted.

B. A convicted person may request forensic DNA testing of any biological material secured in the investigation or prosecution attendant to the conviction that:

   1. Was not previously subjected to DNA testing; or

   2. Although previously subjected to DNA testing, can be subjected to testing with newer testing techniques that provide a reasonable likelihood of results that are more accurate and probative than the results of the previous DNA test.

C. The motion requesting forensic DNA testing shall be accompanied by an affidavit sworn to by the convicted person containing statements of fact in support of the motion.

  D.  Upon receipt of the motion requesting forensic DNA testing, the sentencing Court shall provide a copy of the motion to the attorney representing the state and require the attorney for the state to file a response within sixty (60) days of receipt of service or longer, upon good cause shown. The response shall include an inventory of all the evidence related to the case, including the custodian of such evidence.

  E.  A guardian of a convicted person may submit motions for the convicted person under the provisions of this act and shall be entitled to counsel as otherwise provided to a convicted person pursuant to this act.

Plaintiff asserts that because 22 O.S.2013 § 1373.2 which establishes eligibility for DNA testing and § 1373.2 (A)(2) and (3) establish the following "(2) Persons convicted on a plea of not guilty, guilty or nolo contendere; and (3) Persons deemed to have provided a confession or admission related to the crime, either before or after conviction of the crime…." Plaintiff argues that 22 O.S. § 1373.4 creates an arbitrary statutory scheme which provides an unconstitutional discretionary mechanism rendering the constitutional inadequacy to access biological material suitable for DNA testing. The language under § 1373.4 (A) (1-5) provides:

  A.  After the motion requesting forensic DNA testing and subsequent response have been filed, the sentencing Court shall hold a hearing to determine whether DNA forensic testing will be ordered. A Court shall order DNA testing only if the Court finds:

    1.  A reasonable probability that the Plaintiff would not have been convicted if favorable results had been obtained through DNA testing at the time of the original prosecution;

    2.  The request for DNA testing is made to demonstrate the innocence of the convicted person and is not made to unreasonably delay the execution of the sentence or the administration of justice;

    3.  One or more of the items of evidence the convicted person seeks to have tested still exists;

    4.    The evidence to be tested was secured in relation to the challenged conviction and either was not previously subject to DNA testing or, if previously tested for DNA, the evidence can be subjected to additional DNA testing that will provide a reasonable likelihood of more probative results; and

    5.    The chain of custody of the evidence to be tested is sufficient to establish that the evidence has not been substituted, tampered with, replaced or altered in any material respect or, if the chain of custody does not establish the integrity of the evidence, the testing itself has the potential to establish the integrity of the evidence. For purposes of this act, evidence that has been in the custody of law enforcement, other government officials or a public or private hospital shall be presumed to satisfy the chain of custody requirement of this subsection absent specific evidence of material tampering, replacement or alteration.

State law is inadequate to provide equal protection under the law to Defendants seeking DNA testing because of the ambiguity in the statutory scheme. Plaintiff's request under § 1373.4 (A) (1) requires a finding that a reasonable probability that the Movant would not have been convicted if favorable results had been obtained through DNA testing during the original prosecution which is an unconstitutional deprivation to access biological material to prove a persons' innocence with new evidence. A reasonable probability as defined in *United States v. Bagley*, 473 US 667, 105 (1985), as evidence sufficient to "undermine confidence" in the outcome of the proceeding. While favorable results of DNA would alter a jury's determination it also questions the charging power of the state which is fundamental establishing that the state suppressed exculpatory evidence. The charging power of the state is so rooted in the Nation's history and traditions as to be fundamental.

Further, to show entitlement to relief, Plaintiff must first demonstrate that state law created a liberty interest in demonstrating innocence with new evidence. See *Dist. Attorney's Office for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 68 (2009). A liberty interest has been established

under 22 O.S. § 1373.5(A) as "it allows for the vacation of a conviction, or other appropriate relief, upon a showing of favorable DNA test results" because this statute creates a liberty interest in demonstrating innocence with new evidence. *Osborne*, 557 U.S. at 68. See *Wilkinson v. Dotson*, 544 U.S. 74 (2005). Plaintiff is not attacking his conviction, only the inadequacy of access to DNA evidence to demonstrate his innocence with new evidence. Further, discussing the history and advancements in DNA testing Plaintiff states:

### *Cybergenetics' TrueAllele Computer Analysis of Complex DNA*

Plaintiff states this method of analyzing evidence is so accurate that it overcomes the human limitations of *"inconclusive"* methods. TrueAllele objectively examines low-level, degraded, touch and mixed DNA samples to calculate match association. The software compares evidence with evidence and separates relatives from mixtures. This technology and the testing techniques are reliable and accurate to separate any combination of mixtures. This testing follows the language used in 22 O.S. 2013 § 1373.2(B)(2). This method provides an accurate technique for complex DNA testing.

### *Touch DNA a Technique*

The touch DNA method is used in analyzing skin cells left behind when assailants touch victims, weapons or *anything else at a crime scene*. Humans shed tens of thousands of skin cells each day. These cells are transferred to every surface our skin contacts, i.e. cellular telephones, gun grips, eating utensils, steering wheels, etc. Touch DNA is now low copy number DNA, which allows a very small amount of DNA to be analyzed, from as little as **5 to 20 cells**. The small amount of starting DNA in LCN samples requires many more cycles of amplification. This establishes more accuracy and reliability than previous testing techniques. In a major advance, the analysis of DNA has evolved from a laborious process taking weeks or even months to a procedure that can

be completed in a matter of days. DNA technology is constantly evolving through new applications and innovations. Forensic scientists are combining advances in miniaturization and microchip technologies with well-established techniques of forensic DNA analysis.

## VII. RELIEF REQUESTED

Plaintiff requests injunctive relief to access the evidence sought by transferring the chain of custody to the "DNA reference lab" at 5819 NW Loop 410, San Antonio, TX 78238 and delivered to Dr. Salih. After testing is complete custody of the evidence will be transferred back to the current custodian. This relief should be granted without delay and Plaintiff can provide chain of custody for transfer of evidence.

## VIII. EXHAUSTION OF STATE COURT REMEDIES

Plaintiff has sought relief in the state courts with that relief being denied. The state court made no reasoned opinion about DNA testing because the Court's Order could not bar consideration for a Fourteenth Amendment violation. No other remedy exists at law to access the biological evidence.

## IX. CERTIFICATION AND CLOSING

I certify to the best of my knowledge, information, and belief this Complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the Complaint otherwise complies with the requirements of Rule 11.

`

        Respectfully submitted,

/s/ DEBRA K. HAMPTON
DEBRA K. HAMPTON, OBA # 13621
Hampton Law Office, PLLC
3126 S. Blvd., # 304
Edmond, OK 73013
(405) 250-0966
(866) 251-4898 (fax)
hamptonlaw@cox.net
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

     I certify that on August 7, 2020, I served the attached document by mailing to the Plaintiff as he is not a registered participant of the ECF System:

Christopher J. Tarver, # 225730
CCF
3200 S. Kings Highway
Cushing, OK 74023

        /s/ DEBRA K. HAMPTON
        DEBRA K. HAMPTON